This is actually a very simple issue compared to the first one, and that is I'm talking specifically about condition number 14 under the special conditions of supervised release. My argument is that the government cannot legislate people's thoughts, and that's what this condition seeks to do. It not only suggests that Mr. Ross is not supposed to have associations with certain persons or members, but also that he's not supposed to have any membership with any organization that advocates engaging in criminal activity or overthrowing the United States government and not possessing neo-Nazi white supremacist paraphernalia. Well, let's take the two separately. First of all, is the freedom of association issue. If this guy is an admitted white supremacist and the district court so found, as a matter of fact, what's wrong with prohibiting him from associating with, during the period of his supervised release, other white supremacists? That's what got him in trouble in the first place. And how is that different from prohibiting a convicted Hell's Angel member in a murder drug distribution case, as we've seen in the past in this court, from associating with outlaw motorcycle gangs as a condition of their supervised release? Well, I think that a white supremacist group or member, that could mean a lot of different things, and that's what the problem is. Well, we know what it means here, don't we? Well, he didn't say, for example, not to have any association with national alliance members. There's no specific defined group out there to which – I mean, there are defined groups. There are Aryan nations, and I think I'd be in a different position if that's what this said. If this said not to have association, for example, with Hell's Angels or National Alliance, if it's specifically spelled out, I think I'm in a different position than the way this is written. The way this is written is I recall the restriction in Hell's Angels' case wasn't to Hell's Angels. It was to motorcycle clubs. The restriction in the Irish – in the IRA case wasn't to the IRA. It was to Irish pubs. Right. You've got to make sure you can go to church. Right. Yeah, I saw that in that case. But if we can restrict a person's First Amendment rights of association, and apparently our case law says we can, then what's the difference in restricting him from possessing certain types of literature? For example, if he had been convicted of making bombs, is it your position that the district court could not prohibit him from possessing bomb-making materials or instructions on how to put together nuclear weapons? No, that would not be my position, because I think under those circumstances, that would very clearly be something that would advocate illegal activity. Something in general, overthrowing the United States government, that could be Bob Dylan songs. I mean, there are a lot of things out there that – Well, there's still a statute on the books, as I recall, that prohibits sedition. Is there not? There is, but that's different – The Supreme Court has never declared that statute to be unconstitutional in violation of the First Amendment. Well, I think that that's a different circumstance than the way this is worded here. And that's what our objection is to the way this is worded. Not necessarily that a court can't do it, but just that it can do it under more specific circumstances. Is there a difference that if there's any question as to whether or not this guy can do something under this restriction, he can simply pick up the phone and call his probation officer and say, hey, I'd like to go out to the Spokane Valley Mall on Saturday and distribute this literature. Is it all right under my supervised release to do that? Well, I think that gets to my second point, is that this is a circumstance where it's unconstitutionally vague, because it's not clear by how that's written if that would be prohibited or not. All right. You can ask the guy in advance. I mean, that is a difference with regard to probation and supervised release conditions, which is that you have an available source, the enforcer, and you can ask them. Does that matter? I think that matters, because I think that you're – what you're dealing with is different probation officers. And the problem is maybe one person is going to say yes, and another person is going to say no. Maybe you can go into court and get a clarification. You could. But I think the problem in this circumstance is that, like I say, it's overbroad. It encompasses far more than just something that would be – Well, it is qualified by known. Like, you can't associate with known members of a white supremacist organization. And I – why is it that you think the district court has to tick off every possible such organization? Well, I think that because of the nature of that, a white supremacist member is a person who can have those beliefs and not necessarily be engaged in any criminal activity whatsoever. Is there any case law applying vagueness in general to supervised release conditions? The only things that I found regarding vagueness, I cited in my brief, there wasn't a lot on that. There's vagueness challenges to pornography, for example. Right. And that was – mainly, that's the cases I found were pornography cases. And there was one where they said that it was too vague. It was – I'm sorry? It was too vague because pornography was too vague. Right. And that was a pornography situation. And that's what you have here. Pornography is such a broad thing. What about the word paraphernalia, which actually troubles me more than the rest of it? I mean, I understand in general what it means to associate and so on, and I don't have particular problems with it. But what is paraphernalia? Does it include books? How do we know it includes books? We don't know whether it includes books or not. The government cites in their brief the common Webster definition of paraphernalia, but that's not necessarily what a probation officer is going to see as paraphernalia. They might come to a person's home and, I don't know, see the Mein Kampf by Hitler and consider that to be a violation. I think under this condition it is. Even in all of those cases, though, the district court ultimately has to make a determination after the probation officer brings the alleged violation to the court's attention as to whether or not that particular conduct violates the terms of the condition. So why doesn't that, to get back to the question we asked you earlier about getting approval by the court, why doesn't that save this particular condition from the vagueness challenge, which is, do you concede that it's reasonably related, given the fact that he was convicted of firearms and other weapons violation as a result of these activities? I don't concede the way this is, that it is reasonably related. I think it could be worded in such a way that was. But suppose it said you can't have, you know, T-shirts, hats, pamphlets, posters, et cetera, with Nazi or neo-Nazi or white supremacist messages. That would be okay? I don't think necessarily that would be okay, no. But at least it would be better defined. It wouldn't be vague. What's that? It wouldn't be vague, but it might be impermissible. Right. It would be certainly much better defined as to what. You'd still have, I think you'd still have some unreasonable First Amendment problems with that, but at least it would be very clear how a person would, you know, Mr. Ross would know, okay, if I have a T-shirt, that's going to violate this statute or this condition, but if I have a. So why is it unreasonable when it does appear that his connection with these groups is underlying his offense? I think that it's not reasonable in this circumstance because the way this is written is much broader, and I keep saying that. Well, I was using my hypothetical right now. I mean, if it was written clearly, why wouldn't it be okay? Because I still think you have some First Amendment problems. I understand that, but why? I mean, First Amendment, you can have First Amendment restrictions in a supervised release condition. So why is this particular one, if it was clearly written, not reasonably related and otherwise meet the statutory standards? Because I think in this circumstance, using your example, if you have those sorts of things aren't illegal, per se, there's nothing. Well, most things that aren't supervised are. And white supremacist materials can include a wide, wide variety of things that aren't reasonably related to any criminal activity that Mr. Ross did in this case. But if the policy of the law, Ms. Moran, is to prohibit criminals, a convicted felon in this case, from associating with other people who are likely to get him into trouble again, why isn't this a reasonable restriction on his activities while he's still under court supervision to make sure that he doesn't fall back into his illegal bit way? I'd better save the last 30 seconds, if I may. Does that mean you're not going to answer my question? No, can I answer it? I'm going to leave it as a rhetorical question that the court will have to answer. Yes. No, I'll come back to it. All right. It gives me a little time to think. I will eagerly await your delayed response. Mr. Jacobs. May it please the Court, Your Honors, the United States has laid out its position fairly well, and I believe that the ---- Could you just tell me why paraphernalia is not a vague thing? Because you didn't say anything about that. Your Honor, if you look at the, I believe, page 2 of the pre-sentence investigation report, the United States probation officer who prepared that report specifically referred to paraphernalia. She described, I believe, C.D. ---- It's not in the condition. You can put it in the condition. Why do we have remand and let the district judge say what he means? But it's not there now. Well, Your Honor ---- Do you think it includes books? Do you think it includes Mein Kampf or a biography of Hitler? Your Honor, the condition is very narrowly tailored. It was mentioned that it's known neo-Nazi groups, and Mein Kampf ---- I'm not talking about that. I'm talking about paraphernalia. The word paraphernalia. The condition prohibits neo-Nazi white supremacist paraphernalia. Okay. Does that include a biography of Hitler? If that was written by a neo-Nazi, yes. And otherwise? If he's just interested in Hitler? Well, or if it was written by a white supremacist, yes, Your Honor. It would prohibit that. That's a very strange use of language. I wouldn't call a book, biography, paraphernalia. And if you would, then I think, why don't we have a vagueness problem? I mean, it's interesting that the other case that uses the word paraphernalia, the case about paraphernalia in the drug context, there's a whole list of what paraphernalia is, and that's why it wasn't vague. But here there is no list. Your Honor, the United States agrees that Judge Nielsen did not itemize paraphernalia. However, there's a factual basis for it in the record. Specifically, it talks about tapes, CDs, the distribution of white supremacist flyers, which Mr. Ross engaged in in December of 2004. So can we authoritatively interpret paraphernalia to mean what's in the PSR and nothing else? So he knows now he'll know if he didn't know before? Your Honor, I – Mr. Ross has notice – the United States would argue that Mr. Ross has notice of what paraphernalia means. He read the pre-sentence investigation report, and paraphernalia, in addition to the CDs and tapes, high-tech – high-tech computer games, for example, ethnic cleansing. The United States' position would be that that would constitute paraphernalia. Where is that in the PSR, by the way, do you know? Your Honor, I believe it's on page 2 of the addendum. I think it's the addendum to the pre-sentence investigation report, and I've set that forth on pages 9 and 10 of my brief. Well, that just says what the National Alliance does. It doesn't even use the word paraphernalia in that paragraph. It – that's correct, Your Honor. However, it goes on to discuss resistance records, white power tapes, CDs. The National Alliance also has entered the field of high-tech computer games, and it specifically mentions the video game ethnic cleansing, and then – Well, I don't think you mean, or do you, that that is everything that is included in the term paraphernalia? If you do, I guess we can also agree, write it down in an opinion, and that will be the end of it. But I don't think that's what you mean. Your Honor, that's correct. I would not argue that paraphernalia is only limited by what's set forth in the addendum to the pre-sentence investigation report. So it doesn't help at all. So what does paraphernalia – so it's not the definition. So what is the definition? Well, I know – I believe I gave a definition in my – in my brief. I cited the dictionary. Paraphernalia is defined as personal belongings, articles of equipment, furnishings, and accessory items. Posters, that could be paraphernalia. It doesn't sound like it includes books. That definition, I wouldn't say includes books. Well, if – if Mr. Ross possessed a book that advocated the overthrow of the United States government or espoused white supremacy or ethnic cleansing, that would be covered under this condition as paraphernalia. The list in the statute about drug paraphernalia does not – it includes instructions, but it doesn't include books about drugs, because it's an odd use of language to talk about a book discussing something as paraphernalia. Your Honor, I believe Judge Tolman mentioned something earlier that – a book about making a bomb. The government's position is that – that if Mr. Ross possessed a book espousing white supremacy or ethnic cleansing, that even though – perhaps the judge should have put in books, too, but paraphernalia is a – I would argue that books would be covered under paraphernalia. Well, if we had a drug paraphernalia restriction and the defendant had been convicted of cooking methamphetamine, presumably if he were found in possession of written instructions, whether in book or pamphlet form, telling him how to cook the stuff, that would be a violation of the condition, wouldn't it? Yes, it would be, Your Honor. That would be. So if Mr. Ross was possessing a book that gave him – set forth 99 ways to overthrow the United States government, that would be a violation of the condition of supervised release. Is there any other questions? I don't think so. Thank you. Just Judge Tolman's lurking question. Yes, that's right. I have about 15 seconds. Well, you've had plenty of time to think about the answer. Yes, I had a little time to think. The question, I think, was about whether it's reasonably related and the groups themselves. The problem with a white supremacist member is that that's not a defined group. That could be anyone. In fact, as the Bureau of Prisons – It's pretty specific here, is it not? I mean, we know that this guy was distributing material for the National Alliance. We've got a district judge who sits in the Eastern District of Washington, which is a known haven for these sorts of groups. We're not looking at this thing in a factual vacuum, are we? If it said National Alliance, I think I'm in a different boat. And I'd be definitely rowing upstream. But your client admits he's a white supremacist. So to tell him that we don't want you associating with any other people who are white supremacists or possessing their paraphernalia, I don't see that that's a huge problem for your client to understand what he's not supposed to do. Well, in this circumstance, some of the people that are being included include his family. So that's a situation where that's being defined as one probation officer's – He's transferring the weapons to his father. I'm actually surprised that we don't see the father here as well. You know, this is not exactly an innocent family. Right, and that may be true, but – So there might be, in an appropriate case, a restriction to say you can't associate with your father because he's a co-conspirator with you. Right, but I think that it's different to say you can't associate with bloods or crips or gang members or felons or drug dealers versus white supremacist members. If the guy's been convicted of a drive-by shooting involving gangs, you're telling me that we can't restrict him as part of his supervised release from associating with street gangs? No, I'm saying that this is the opposite. This is not that kind of situation. Saying that you can restrict someone from having association with street gangs is different than saying people that have a certain belief structure that maybe we don't all agree with but nevertheless is out there. It's not a clearly defined sort of group. I mean, there are clearly defined groups, and if it's said it that way, if it's said National Alliance or Aryan Nation, those are clearly defined groups. I mean, the last time I looked, and I am no expert on this subject, but if there were a number of neo-Nazi or white supremacist groups in the North Idaho Panhandle and in the eastern part of the eastern district of Washington, does the district judge have to go to the local intel agent at FBI and ask for the most current task force report identifying all of the known groups that advocate white supremacy in order to make this a valid restriction? We're not writing a statute here. We're telling a guy who's been convicted of white supremacist related crimes don't associate with these people. If you do, we're going to violate the conditions of your supervised release. Right, and I think that that's the problem, is it's not clear what association would include that. I mean, maybe a National Alliance would, but maybe having coffee with his brother also would. That's what we don't know, and that's what the problem is with this kind of condition. It's the same as the paraphernalia condition. You have a probation officer basically reading this and making a judgment call. I still don't see how this is different from motorcycle games without listing the Hells Angels, the Easy Riders, whatever they are. Because that includes the idea that there's a gang or a club. People that could be in a white supremacy group or member, they could not necessarily be in a group. But this does say that, actually. It says neo-Nazi white supremacist members. Members, right. It suggests a group, not just a group. That's right. That suggests some sort of membership, but it could mean membership of both organizations that do advocate dangerous activities and organizations that don't. And I think that that's what the problem is, is you have a whole subsection of maybe organizations that... But you can restrict the convicted gunman for the IRA of going to Irish bars because he might be meeting IRA sympathizers. Why can't we restrict him from attending white supremacist meetings and possessing their paraphernalia while he's still under sympathizers? Because the IRA suggests specifically, if I recall that case, suggests specifically certain groups and members, including IRA members. This situation, a person could be a white supremacist member of an organization that's a completely legitimate organization. But do we care? I mean, you say completely legitimate. The problem is that these organizations might be involved in legitimate and illegitimate activities, and because we don't want them associating because of the risk of recidivism, we tell them, stay away from these people. What's wrong? You know, all I can say is that I think it's not necessarily reasonably related to the way it's written. I understand. Thank you. All right. Counsel, thank you for your argument in this matter. Are we going to see you again in the next case? No.
judges: Rymer, Berzon, Tallman